UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DIANE WILLS,

                Plaintiff,

      v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                Defendant.

Case No. C15-1231-RSM

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Ms. Wills seeks review of the denial of her application for Supplemental Security Income ("SSI").[1] In determining whether a claimant is disabled the Commissioner must follow a five-step sequential evaluation process. *See* 20 C.F.R. 404.1520, 416.920 (2000). Ms. Wills contends the Administrative Law Judge ("ALJ") erred by (1) finding she could perform past work as a general clerk at step four of the evaluation, (2) finding she could perform the job of hotel/motel housekeeper at step five, (3) finding she had no severe physical impairments at step two, (4) misevaluating the opinion of Linda Jansen, Ph.D., and, (5) misevaluating the opinion of Richard Washburn, Ph.D. Dkt. 11 at 1. Ms. Wills contends that the ALJ's errors at step two and in evaluating the opinions of Dr. Jansen and Dr. Washburn resulted in a residual functional

---

[1] Ms. Wills voluntarily withdrew her request for a hearing with respect to her application for a period of disability and disability insurance benefits ("DIB"). Tr. 15. Accordingly, the ALJ dismissed that claim. *Id.*

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

capacity ("RFC") determination that failed to account for all of her limitations. Dkt. 11 at 19. Ms. Wills contends this matter should be remanded for further consideration of Ms. Wills' physical impairments at step two, reassessment of her residual functional capacity and further findings at step five. Dkt. 11 at 17. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In June 2012, Ms. Wills applied for SSI benefits, alleging disability as of January 31, 2002. Tr. 286-92. Ms. Wills' application was denied initially and on reconsideration. Tr. 112, 133. Thereafter, Ms. Wills filed a written request for a hearing. Tr. 189-90. The hearing was conducted on September 5, 2013 at which time Ms. Wills amended her alleged onset date to June 4, 2012. Tr. 60. On September 26, 2013, the ALJ issued a decision finding Ms. Wills not disabled. Tr. 15-27.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Wills has not engaged in substantial gainful activity since June 4, 2012, the alleged onset date.

**Step two:** Ms. Wills has the following severe impairments: anxiety disorder; affective disorder; and personality disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Wills can perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carry out detailed and complex tasks with SVPs up to 3. She can concentrate for detailed and complex tasks with SVPs up to 3 in two-hour increments

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

with the usual and customary breaks throughout an eight-hour workday. She can work in the same room as co-workers but not in coordination with them and with this restriction she is not likely to be a distraction to her co-workers. She can work superficially and occasionally with the general public. She can interact occasionally with supervisors and can respond appropriately to changes in the workplace, as would be required for detailed and complex tasks with these restrictions.

**Step four:** She can perform past relevant work as a general clerk.

**Step five:** In the alternative, there are other jobs that exist in significant numbers in the national economy that Ms. Wills can also perform including as a janitor, hotel/motel housekeeper and dishwasher. Thus, Ms. Wills has not been disabled from June 4, 2012 through the date of the decision.

Tr. 17-27. The Appeals Council denied Ms. Wills' request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-11.[4]

## DISCUSSION

The Court's analysis of Ms. Wills' ability to perform jobs at steps four and five is contingent on its analysis of the errors alleged at step two and in evaluating the medical opinion evidence. Accordingly, those issues are addressed first.

**A.      Step Two Evaluation**

Ms. Wills argues the ALJ erred at step two in finding she had no severe physical impairment, "based on her finding that the record did not definitively establish osteoarthritis." Dkt. 11 at 11. The Court agrees.

At step two of the evaluation, the Commissioner must determine "whether the claimant has a medically severe impairment or combination of impairments." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden to show that (1) she has a medically determinable impairment, and (2) the medically determinable impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). To establish the

---

[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

existence of a severe impairment, the claimant must provide medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 404.1508.  An impairment or combination of impairments is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 404.1521(a).  "The step two inquiry is a de minimus screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  An impairment or combination of impairments may be found "'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Id.* (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

Here, the ALJ found that "the objective medical evidence does not definitively establish the presence of osteoarthritis or show that [Ms. Wills] has any musculoskeletal impairment that causes functional limitations."  Tr. 19.  In reaching this conclusion the ALJ discounted the opinion of Ms. Wills' treating rheumatologist Caner Sakin, M.D.  Dr. Sakin diagnosed Ms. Wills with osteoarthritis and found that the impairment caused "limitations in mobility and physical activity."  Tr. 603.  Dr. Sakin also opined that Ms. Wills' osteoarthritis symptoms will "likely be chronic."  *Id.*  The ALJ rejected Dr. Sakin's opinion in part because he "did not support his opinion with examination findings, range of motion findings, or any other objective findings related to functioning."  Tr. 19.   However, the parties agree that Dr. Sakin's treatment notes were not included in the record reviewed by the ALJ.  Dkt. 11 at 13, Dkt. 12 at 4.  The parties also agree that the treatment notes were considered and included in the administrative record by the Appeals Council after the hearing and thus, must be considered by the Court as well in determining whether the ALJ's decision is supported by substantial evidence.  *Id.*; *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  Accordingly, the Court must first consider whether this post-hearing evidence undermines the ALJ's step two finding.

Review of the treatment notes reveals that Dr. Sakin reviewed x-rays and performed a physical examination of Ms. Wills in which he noted mild crepitus in her knees and some tenderness to palpation in her right shoulder. Tr. 709-33. The x-rays showed some degenerative changes (albeit minimal) in the medial compartment of the left knee and right shoulder. Tr. 597-600. Having examined Ms. Wills and reviewed the objective tests, Dr. Sakin diagnosed Ms. Wills with osteoarthritis and found that it limited her mobility and physical activity. Tr. 714. This evidence undermines the ALJ's finding that Dr. Sakin's diagnosis and limitations are completely unsupported by examination or other objective findings.

The post-hearing evidence also undermines the ALJ's reference to "minimal" findings on x-rays of Ms. Wills' knees and shoulders as a basis for excluding osteoarthritis as a severe impairment. Tr. 19.

> To say that medical opinions are not supported by sufficient objective findings or are contrary to preponderant conclusions mandated by objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988). Here, Dr. Sakin's notes indicate that he reviewed and considered the x-ray findings prior to diagnosing Ms. Wills with osteoarthritis and assessing her related limitations. Tr. 709-33. The ALJ does not explain why her interpretations of the evidence, rather than Dr. Sakin's, are correct. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (an ALJ may not substitute his own judgment for that of a treating physician); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record). Because the ALJ did not consider Dr. Sakin's treatment notes in making her step two determination, the matter should be remanded for the ALJ to consider this evidence.

The ALJ's other reasons for discounting Dr. Sakin's opinion and rejecting osteoarthritis as a severe impairment are also problematic. For instance, the ALJ found that Ms. Wills engaged in intense physical exercise during the time period in question. Tr. 19. However, Ms. Wills reported that she was only exercising in her hot tub because of her pain. Tr. 78. Moreover, the record indicates that when Ms. Wills tried other exercise, specifically lifting five pound weights, she reported experiencing significant pain to her doctor who advised her to decrease the level of exercise. Tr. 75, 573, 81. She also testified that she had ultimately stopped exercising. Tr. 79. The ALJ also noted that Dr. Sakin's opinion that Ms. Wills' osteoarthritis limited her mobility and physical activity "did not provide any specifics." Tr. 19. However, to the extent the ALJ found Dr. Sakin's opinion of Ms. Wills' physical limitations unclear, her duty was to conduct an appropriate inquiry and develop the record, not to ignore the limitation and reject the impairment as non-severe. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct a appropriate inquiry."); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1998) (ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered"). Finally, there is evidence in the record that Ms. Wills has reported experiencing hand pain (in particular with her right thumb) and difficulty writing for several years and that one provider attributed this to her osteoarthritis. Tr. 77-78, 309, 367, 629, 672. The ALJ failed to address this evidence in evaluating Ms. Wills' physical impairments at step two.

Thus, the ALJ erred at step two in evaluating Ms. Wills' physical impairments. This error was harmful because the ALJ failed to fully consider all the alleged functional limitations

flowing from these impairments in assessing the RFC and in determining the jobs Ms. Wills could perform at steps four and five. *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (an error is harmless only where it is inconsequential to the ultimate nondisability determination); *Cf. Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding any error at step two was harmless where the ALJ considered any limitations posed by the impairment improperly rejected at step two in assessing the RFC and at step four). Accordingly, the matter should be remanded for the ALJ to reevaluate the evidence, develop the record as necessary, and reassess Ms. Wills' physical impairments at step two.

**B.      Medical Opinion Evidence**

Ms. Wills also argues the ALJ misevaluated the opinions of examining psychologists Richard Washburn, Ph.D. and Linda Jansen, Ph.D. Dkt. 11 at 1, 5-11. As discussed below, the Court finds the ALJ properly evaluated these opinions.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician and more weight should be given to the opinion of an examining physician than to a nonexamining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where contradicted, the opinions of treating or examining physicians may not be rejected without "specific and legitimate reasons supported by substantial evidence." *Id.* at 830-31 (quotation and citation omitted).

*1.      Richard W. Washburn, Ph.D.*

Dr. Washburn is an examining psychologist who evaluated Ms. Wills in March 2012. Tr. 528-32. Dr. Washburn noted that Ms. Wills was experiencing severe depression, anxiety, panic attacks, marked sleep disruption and moderate to severe frustration, anger and irritation. Tr. 528. He found Ms. Wills' cognitive functioning intact except for insight and practical judgment. *Id.*

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 7

1  Dr. Washburn diagnosed major depressive disorder, recurrent, severe, generalized anxiety
2  disorder with PTSD symptoms, panic disorder with agoraphobia and personality disorder NOS
3  with possible histrionic features.  *Id.*  Dr. Washburn assessed a Global Assessment of
4  Functioning ("GAF") score of 45.  *Id.*  He also found Ms. Wills' "high levels of anxiety and
5  depression are exacerbated when she leaves the perceived safety of her home" and that she "can
6  function in her home but a friend brought her to the appointment and accompanies her when she
7  shops."  Tr. 529.  Ms. Wills contends the ALJ erred in "failing to explain how she interpreted
8  [Dr. Washburn's conclusions] or incorporated them in her residual functional capacity
9  assessment."  Dkt. 11 at 11.  Ms. Wills also argues that a GAF score of 45 "signals Dr.
10 Washburn's opinion that [Ms. Wills] had marked limitations in functioning."  The Court
11 disagrees.

12       The ALJ gave "some weight" to Dr. Washburn's opinions.  Tr. 24.  Specifically, the ALJ
13 gave significant weight to Dr. Washburn's opinion that Ms. Wills' cognitive functioning is intact
14 "as it is consistent with his examination findings and [Ms. Wills'] demonstrated abilities."  Tr.
15 24.  However, the ALJ discounted Dr. Washburn's remaining opinions because they did not
16 provide a "function-by-function assessment of the claimant's abilities and limitations."[5]  Tr. 24.
17 An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's]
18 functional capacity" during the relevant time period.  *Johnson v. Shalala*, 60 F.3d 1428, 1432
19 (9th Cir. 1995).  Likewise, an ALJ can disregard a medical report that does "not show how [a

---

20 [5] The ALJ additionally rejected Dr. Washburn's opinion that Ms. Wills' insight and judgment were impaired because he did not provide specific examples supporting this conclusion.  Tr. 24.
21 The record does not support this finding.  Dr. Washburn provided the specific example that when asked how she would respond to a fire in a theater Ms. Wills indicated she would "yell fire over
22 and over."  Tr. 530.  However, because the ALJ provided another specific and legitimate reason supported by substantial evidence for discounting Dr. Washburn's opinion, the inclusion of this
23 erroneous reason is harmless.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 8

claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir.1999); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition).  Ms. Wills does not specifically challenge this reason for rejecting Dr. Washburn's opinion and substantial evidence supports this finding.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights'") (*citing Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)).  A review of Dr. Washburn's evaluation reveals that there is a section of the form designated for describing the impact of a patient's symptoms on her ability to work.  Tr. 528-29.  In that section Dr. Washburn notes that Ms. Wills' anxiety and depression is exacerbated when she leaves home and that a friend accompanied her to her appointment and on shopping trips.  *Id.*  However, Dr. Washburn fails to explain how these symptoms or actions translated into specific functional deficits precluding work activity.

Ms. Wills also argues that the GAF score of 45 indicates Dr. Washburn believed Ms. Wills had "marked" limitations in functioning.  Dkt. 11 at 10.  The GAF Scale provides a measure for an individual's overall level of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000). A GAF score of 41-50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed. 2000).  However, the Commissioner has determined that the GAF scale "does not have a direct correlation to the

severity requirements in [the Social Security Administration's] mental disorders listings."  65 Fed.Reg. 50, 746, 50, 765 (Aug. 21, 2000).  Here, Dr. Washburn did not explain what the GAF score reflected in terms of functionality and the ALJ properly rejected the opinion as a whole for failing to explain how Ms. Wills' symptoms translated into specific functional deficits.  Tr. 528.  Moreover, the ALJ's RFC assessment took into account some limitations in social functioning and Ms. Wills fails to establish that the GAF score indicated limitations greater than those included in the RFC.  Thus, Ms. Wills fails to establish harmful error in the ALJ's consideration of the GAF score.  *See Carmickle*, 533 F.3d at 1162-63.

Accordingly, the ALJ did not err in evaluating Dr. Washburn's opinion.

### *2.     Linda Jansen, Ph.D.*

Dr. Jansen is an examining psychologist who evaluated Ms. Wills in August 2012.  Tr. 544-48.  Based on the results of the Trail Making test, Dr. Jansen opined that Ms. Wills has "some difficulty with concentration and cognitive flexibility, which would interfere with [her] ability to persist through a normal work day or to respond appropriately to changes in the workplace."  Tr. 548.  Dr. Jansen also found that "due to her anxiety, Ms. Wills would have difficulty coping with the usual stress encountered in a competitive work setting," that she has "limited social interactions which would interfere with her ability to work with the public or co-workers on a continual basis" and that "she would have difficulty maintaining regular attendance in the workplace due to her agoraphobia."  *Id.*

The ALJ gave "minimal weight" to Dr. Jansen's opinions.  The Court agrees that some of the reasons provided by the ALJ for rejecting Dr. Jansen's opinion are not reasonable,[6] but the

---

[6] Some of the ALJ's interpretations of the evidence were unreasonable.  For instance, the ALJ's rejection of Dr. Jansen's opinion as based on self-reports was not supported by the record.  Dr. Jansen performed a mental status exam, Trail Making Test and made personal clinical

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

ALJ did provide a valid reason supported by substantial evidence.  Specifically, the ALJ found that Dr. Jansen's opinions regarding Ms. Wills' limitations were not consistent with her demonstrated abilities.  Tr. 25.  An ALJ may properly reject even a treating physician's opinion concerning a claimant's limitations where it is inconsistent with a claimant's reported activities.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Ms. Wills does not challenge the ALJ's rejection of Dr. Jansen's opinion on this basis.  Specifically, the ALJ found that Dr. Jansen's opinion that Ms. Wills has difficulties concentrating was inconsistent with her ability to use the computer for extended periods of time.  Tr. 25.  Substantial evidence supports this determination.  Ms. Wills reported that on a typical day she gets on the computer and reads all the news.  Tr. 547.  She also reported that she was able to list and sell items on Craigslist and that she used that income to pay the mortgage for a period of time.  Tr. 84.  The ALJ reasonably concluded that these activities were inconsistent with Dr. Jansen's finding that Ms. Wills had difficulty concentrating.  The ALJ also noted that Ms. Wills' reported that she reaches out and starts conversations with people in line at the grocery store and in the waiting room at the doctor's office and that she gives food to strangers after grocery shopping and helps others.  Tr. 22, 25, 546, 659.  It was reasonable for the ALJ to interpret these activities as inconsistent with Dr. Jansen's findings with respect to Ms. Wills' anxiety, lack of social interaction and agoraphobia.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (where the ALJ's interpretation is reasonable and supported by substantial evidence the court

---

observations and there is no indication that she relied more heavily on Ms. Wills' self-reports than on those objective measures.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion") (*citing Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  However, to the extent this was error the error was harmless because the ALJ provided other specific and legitimate reasons for rejecting the opinion.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

will not second-guess it even if there are other reasonable interpretations).

Thus, the ALJ did not err in evaluating Dr. Jansen's opinion.

**C.     RFC and Steps Four and Five**

As discussed above, the ALJ harmfully erred at step two.  Ms. Wills contends this matter should be remanded for further consideration of her physical impairments at step two.  Remand is appropriate here as there is conflicting evidence which must be reweighed and resolved by the ALJ.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for additional proceedings, rather than an award of benefits, is appropriate "[w]here there is conflicting evidence, and not all essential factual issues have been resolved … ").  On remand, the ALJ should develop the record as necessary and reevaluate the evidence at step two, re-assess and determine Ms. Wills' RFC, and obtain vocational expert testimony at step five, if appropriate.  Because the ALJ's harmful error at step two requires remand, the Court need not address Ms. Wills' assignments of error at steps four and five as those determinations may change on remand.[7]

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

---

[7] Although the Court need not reach the issues, it should be noted that the Commissioner does not specifically dispute Ms. Wills' assignments of error at step four in finding that she could perform past relevant work as a general clerk, or at step five in finding she could perform the unskilled light level of job of hotel housekeeper. Dkt. 12 at 14. Rather, the Commissioner argues that any errors were harmless because the ALJ identified two jobs, one heavy level (janitor) and one medium level (dishwasher), which Ms. Wills could perform. Thus, the inclusion of any physical limitations in reevaluating the evidence at step two and in the RFC on remand may well affect the assessment of whether Ms. Wills can perform the medium and heavy level jobs previously identified at step five.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 12

1   On remand, the ALJ should reevaluate the evidence at step two, re-assess and determine

2  Ms. Wills' RFC, and obtain vocational expert testimony at step five, if appropriate.

3   DATED this 13th day of April 2016.

 

                                            RICARDO S. MARTINEZ
                                            CHIEF UNITED STATES DISTRICT JUDGE

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13